Albert J. Blackwood and Pauline M. Blackwood v. Commissioner.
Blackwood v. Commissioner
Docket No. 75508.
United States Tax Court
T.C. Memo 1960-131; 1960 Tax Ct. Memo LEXIS 158; 19 T.C.M. (CCH) 681; T.C.M. (RIA) 60131; June 21, 1960
Albert J. Blackwood, 1005 Boulevard, Westfield, N.J., for the petitioners. Scott A. Dahlquist, Esq., for the respondent. TURNER Memorandum Findings of Fact and Opinion TURNER, Judge: The respondent determined a deficiency in income tax against the petitioners for the taxable year 1955 in the amount of $190. The only question presented *159 is whether the petitioners are entitled to a deduction of $500, which represents 50 per cent of the $700 tuition paid to Blair Academy upon their son's entrance to that school and which was not recovered when the boy left school after attending only two weeks, plus $150 paid an attorney in attempting to recover the tuition and in effecting the $350 settlement of the claim. Findings of Fact Petitioners were husband and wife during 1955, and residents of Westfield, New Jersey. They filed a joint income tax return for the taxable year 1955 with the director of internal revenue at Newark, New Jersey. On May 10, 1959, after the filing of the petition herein, Pauline M. Blackwood died, leaving her husband, Albert J. Blackwood, as the sole surviving petitioner and who will be referred to hereafter as petitioner. Petitioner is a research engineer and during 1955 was employed by the Esso Research & Engineering Company, Elizabeth, New Jersey. In late August or early September 1950, petitioner arranged for his son, David, to enter Blair Academy, at Blairstown, New Jersey, to prepare for a university career. Upon the registration of David, petitioner paid $700, which covered tuition, *160 board, room rent and other incidental items for the first semester. Petitioner was informed at the time that in the event David withdrew from school on account of illness or injury the academy would make no refund of any part of the tuition, but that it had an arrangement with the National Casualty Company for the parents to purchase insurance in order to protect the cost of the tuition. The academy, as agent of the insurance company, sold petitioner an insurance policy for such protection, at a cost of approximately $21. Petitioner also paid a premium of $5 for another policy for "Accident Medical Reinbursement." During the summer of 1950, David worked as a carpenter's helper, and about two weeks prior to entering Blair Academy, he was struck on the head by a board falling from a platform, causing a bump or bruise. Upon his return home after work, he visited and consulted the family physician with respect to the injury. He was not hospitalized and he did not make application for workmen's compensation. David attended the academy about two weeks, when he quit school and suddenly appeared at his home, without having talked with his parents about leaving the school. His stated *161 reason for leaving school was that he was continually having headaches and could not study. Petitioner first discussed David's situation by telephone with the headmaster of the academy, who stated that David did not like the school and left. Later petitioner went to the academy to get David's clothes and books, and was advised that David had told the school's physical examiner that he was having headaches and that in view of this representation David had been advised not to participate in any of the school's games or sports during the semester. Petitioner requested the academy to refund the tuition, but was told that that was a matter to take up with the insurance company. At all times, it was the attitude of the academy authorities that David quit school because he did not like it. About a year later, David entered the Navy. During the interval he had no physical examination, although to his father and mother he seemed for a period of time to be irrational and not his normal self, hardly speaking to them. He threatened to leave home and on one occasion packed his clothes and did leave, but returned the same night. After returning home from the academy, David worked as an automobile *162 service station helper and in the parts department of a local car distributor. In so far as it appears, he lost no time from his work on account of illness, headaches or physical disability. His service in the Navy beginning about a year after leaving the academy, continued for four years. Before the end of 1950, and after his claim for the tuition had been rejected by the academy and the insurance company, petitioner instituted a civil suit against both in an attempt to force payment of his claim. On his 1950 income tax return, he claimed a loss deduction in the amount of $700. He was told by a representative of the respondent that he should wait until the pending suit was terminated and then make the claim, if he had a proper claim, for the loss deduction. In 1955 the insurance company offered to pay 50 per cent of the claim, and upon advice of his attorney petitioner accepted $350 in settlement of the claim and the civil suit. On the joint return for 1955, petitioner and his wife claimed a deduction of $500, described as a "Loss of Money Paid Blair Academy." The claimed loss of $500 was computed in the schedule attached to the return, as follows: Law suit to recover tuition paid to Blair
Academy. My son left after two weeks and
I claimed return of tuition paid as per insur-
ance contract signed with school as agent.
Insurance company refused, claiming my son
left for reasons other than illness from in-
jury.
Amount claimed
$700.00
Paid to Blair
Expenses of law suit
150.00
$850.00
Insurance company fi-
nally offered to settle
for 1/2 of claim - and my
lawyer advised me to ac-
cept on basis cost of
further suit would equal
the difference
350.00
(final settlement in 1955)
Net loss
$500.00
(Have full papers to support these state-
ments.)
*163 Respondent disallowed the deduction claimed, on the ground that the expenditure for which loss was claimed was a personal expenditure, not deductible under section 262 of the Internal Revenue Code of 1954. Opinion The petitioner expresses the issue to be decided as follows: "Granting the truth of the facts as presented, is the $500.00 deduction claimed by the petitioner for 1955 a deductible item under the Internal Revenue Code." He refers to no section of the Code nor to any court decision as authority for permitting the deduction. We have found none. Actually, the $500 claimed as a deduction represents two different amounts, $350 as the 50 per cent of tuition not recovered and $150 paid as attorney's fees in attempting to recover the full amount $700of and in obtaining the $350 settlement. Neither payment is a business or nonbusiness expense, within the meaning of sections 162 and 212 of the Internal Revenue Code of 1954. Actually, such allowance as is made to a parent for the cost of the education of a child is in the form of the exemption allowance for dependents under section 151(e)(1)(B) and (e)(4). There is clearly *164 no casualty loss, for which a deduction could be claimed, since such losses are restricted to property losses. See section 165(c)(3). Furthermore, under section 262, "except as otherwise expressly provided * * * no deduction shall be allowed for personal, living, or family expenses." The items herein qualify for deduction under none of the provisions mentioned, and the petitioner having failed to show error in the deficiency as determined, the respondent is sustained. Decision will be entered for the respondent.